**MDSM**
ELAINE K. FRESCH
NEVADA BAR NO. 9263
GIL GLANCZ
NEVADA BAR NO. 9813
ERIC O. FREEMAN
NEVADA BAR NO. 6648
SELMAN BREITMAN LLP
3993 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169-0961
Telephone:     702.228.7717
Facsimile:      702.228.8824
Email:          efresch@selmanlaw.com
Email:          gglancz@selmanlaw.com
Email:          efreeman@selmanlaw.com

Attorneys for Defendants COLIN CROSSMAN,
DEANNA CROSSMAN, and MT.
CHARLESTON LANDLORD LLC

Selman Breitman LLP
ATTORNEYS AT LAW

## DISTRICT COURT

## CLARK COUNTY, NEVADA

THE SIEGEL GROUP NEVADA, INC., a
Nevada Corporation; GARRETT CAPITAL
LLC doing business as ARTISAN HOTEL
BOUTIQUE, a Nevada limited liability
company,

   Plaintiff,

  v.

COLIN CROSSMAN, an individual;
DEANNA CROSSMAN, an individual; MT
CHARLESTON LANDLORD LLC, a Nevada
limited liability company; IPG
INVESTMENTS LLC, a Washington limited
liability company; DOE DEFENDANTS I-X,
unknown individuals; and ROE COMPANIES
XI-XX, unknown entities,

   Defendants.

Case No. A-18-781311-C
Dept.:     32

**DEFENDANT MT. CHARLESTON
LANDLORD LLC'S SPECIAL MOTION
TO DISMISS PURSUANT TO NRS 41.660
(ANTI-SLAPP STATUTE)**

COME NOW Defendant MT. CHARLESTON LANDLORD LLC (hereinafter referred to

as "Defendant") by and through their attorney of record, Elaine K. Fresch, Esq. and Eric O.

1

102388.1 1359.44890

Freeman, Esq. of Selman Breitman LLP, and hereby moves to dismiss Plaintiffs The Siegel Group Nevada, Inc. and Garrett Capital LLC's Complaint pursuant to Nevada's Anti-SLAPP statute, NRS 41.660.

This motion is made and based upon all documents, pleadings and papers on file herein, the points and authorities contained herein, and any arguments by counsel at the time of the hearing.

DATED: December 3, 2018    SELMAN BREITMAN LLP

By:    /s/ Eric O. Freeman
        ELAINE K. FRESCH
        NEVADA BAR NO. 9263
        GIL GLANCZ
        NEVADA BAR NO. 9813
        ERIC O. FREEMAN
        NEVADA BAR NO. 6648
        3993 Howard Hughes Parkway, Suite 200
        Las Vegas, NV 89169-0961
        Telephone: 702.228.7717
        Facsimile:  702.228.8824
        Attorneys for Defendants COLIN CROSSMAN,
        DEANNA CROSSMAN, and MT.
        CHARLESTON LANDLORD LLC

## NOTICE OF MOTION

YOU AND EACH OF YOU, WILL PLEASE TAKE NOTICE that the undersigned will bring the forgoing **DEFENDANT MT. CHARLESTON LANDLORD LLC'S SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660 (ANTI-SLAPP STATUTE)** on for hearing before the above-entitled Court on the ___11___ day of ___December___, 2018, at the hour of ___10:30 A___.m or as soon thereafter as counsel can be heard.

2

102388.1  1359.44890

DATED: December 3, 2018         SELMAN BREITMAN LLP

By:    /s/ Eric O. Freeman
         ELAINE K. FRESCH
         NEVADA BAR NO. 9263
         GIL GLANCZ
         NEVADA BAR NO. 9813
         ERIC O. FREEMAN
         NEVADA BAR NO. 6648
         3993 Howard Hughes Parkway, Suite 200
         Las Vegas, NV 89169-0961
         Telephone: 702.228.7717
         Facsimile: 702.228.8824
         Attorneys for Defendants COLIN CROSSMAN,
         DEANNA CROSSMAN, and MT.
         CHARLESTON LANDLORD LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND STATEMENT OF FACTS

This matter arises from the purchase and financing of the Mt. Charleston Resort property in Mt. Charleston, Nevada. The property was purchased by Defendant MT Charleston Landlord LLC ("Defendant") from Plaintiff The Siegel Group Nevada, Inc. ("Plaintiffs") in June 2018.

As part of the financing efforts, MT Charleston Landlord LLC created and distributed a five-page Executive Summary regarding the Mt. Charleston Resort. (See Executive Summary, attached as Exhibit A). The Executive Summary was created from extensive investigation, research and inspection of the property and community. (See Declaration of Colin Crossman attached as Exhibit B). In the Executive Summary, MT Charleston Landlord LLC described the property history, planned acquisition, and restoration of the boutique property. The summary discussed the history of the resort, the Las Vegas market, tourism, and the effect the proposed restoration would likely have on revenue. The summary also discussed opinions regarding the perceived problems the resort experienced in the past with operations, management and marketing. This Executive Summary was made public and mainly dispersed to potential investors, lenders, brokers and investment firms. Also, it is understood that other individuals and entities circulated the summary during the financing of the property.

Selman Breitman LLP
ATTORNEYS AT LAW

102388.1 1359.44890

Case 5:18-cv-00541-BO   Document 9-1   Filed 12/10/18   Page 3 of 51

On September 18, 2018, Plaintiffs filed a Complaint alleging Business Disparagement and Injunctive Relief claiming Defendants made false and defamatory statements concerning Plaintiffs and published the false and defamatory statements to third parties. (See Plaintiffs' Complaint attached as Exhibit C). Plaintiffs claimed Defendants made "numerous false and defamatory statements." (See Exhibit C). The statements and opinions were truthful and based on facts, market research, news, and communications with Plaintiffs. The summary accurately described the Mt. Charleston Resort and the history of its operations, management and renovations. These causes of action are meritless against Defendants. Therefore, Defendants bring this special Motion to Dismiss pursuant to Nevada's Anti-SLAPP statute, NRS 41.635, et seq.

Nevada has passed one of the nation's strongest Anti-SLAPP laws to protect defendants exercising their First Amendment rights. Plaintiffs' lawsuit is an attempt to suppress speech related to a well-known Mt. Charleston landmark which is an issue of public interest. The Court should dismiss these claims against Defendants and award Defendants their attorney's fees and costs.

## II.   LEGAL ARGUMENTS

### A.   Standard

Under Nevada's anti-SLAPP statutes, a defendant may file a special motion to dismiss if the defendant can show "by a preponderance of the evidence, that the claim is based upon good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a); *Shapiro v. Welt*, Nev. Adv. Op. 6, 389 P.3d 262, 267 (2017). A "person who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication." NRS 41.650. A person against whom the action is brought may file a special motion to dismiss within 60 days after service of the complaint. NRS 41.660. This motion is timely under NRS 41.660.

The Court evaluates a special anti-SLAPP motion to dismiss using a two-part process. **First**, the defendant must show, by a preponderance of evidence, that the plaintiff's claim "is based

Selman Breitman LLP
ATTORNEYS AT LAW

upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). The statute includes several broad categories of speech with one being "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum, which is truthful or is made without knowledge of its falsehood." NRS 41.637(4). This category is construed broadly. See *Shapiro v. Welt*, 133 Nev. Adv. Op. 6, 389 P.3d 262, 266 (2017).

**Second**, once a defendant meets this initial burden, the Court must determine whether plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim. NRS 41.660(3)(b). Specifically, once a defendant makes this initial showing of the statute's applicability, it becomes the plaintiff's burden to establish that the claim is likely to succeed.

If this Court grants a special anti-SLAPP motion to dismiss, defendants are entitled to an award of reasonable costs and attorneys' fees, as well as an award of up to $10,000.00. NRS 41.670(1)(a)-(b). Additionally, upon the granting of a special anti-SLAPP motion to dismiss, defendants can bring a separate cause of action against SLAPP plaintiffs for compensatory damages, punitive damages, and attorney's fees and costs associated with bringing the separate action. NRS 41.670(c).

Because a suit pursuant to NRS 41.670(c) cannot commence unless the Court grants a special motion to dismiss, a special motion to dismiss "functions as a motion for summary judgment and allows the district court to evaluate the merits of the alleged SLAPP claim." *Stubbs v. Strickland*, 129 Nev. Adv. Op. 15, 297 P.3d 326, 329 (2013); see also NRS 41.660(5) ("If the court dismisses the action pursuant to a special motion to dismiss filed pursuant to subsection 2, the dismissal operates as an adjudication upon the merits."). In addition, the Court may award an additional sanction of $10,000 to the defendant. NRS 41.670(1)(b).

Both the Nevada Legislature and Nevada Courts have recognized that it is instructive to look to case law interpreting California's anti-SLAPP statute. See NRS 41.665(2) ("the Legislature intends that in determining whether the plaintiff 'has demonstrated with prima facie evidence a probability of prevailing on the claim' the plaintiff must meet the same burden of proof that a

5

102388.1 1359.44890

plaintiff has been required to meet pursuant to California's anti-Strategic Lawsuits Against Public Participation law as of June 8, 2015"); see also *John v. Douglas County Sch. Dist.*, 125 Nev. 746, 756, 219 P.3d 1276, 1283 (2009), superseded by statute on other grounds as stated in *Shapiro v. Welt*, 133 Nev. Adv. Op. 6, 389 P.3d 262, 266 (2017) ("we consider California case law because California's anti-SLAPP statute is similar in purpose and language to Nevada's anti-SLAPP statute").

### B. The Executive Summary is a "Good Faith Communication"

A defendant invoking the anti-SLAPP statute has the initial burden of establishing that the speech at issue falls within the ambit of the law, by showing that the speech is "a good faith communication in furtherance of the right to petition or the right of free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). In this case, Plaintiffs' claims are based upon Defendants' good faith communications in furtherance of their right to free speech in direct connection with an issue of public concern.

The Executive Summary is protected speech and the summary consists of true statements and non-actionable opinions. The determination of whether a statement is a protected "opinion" is a question of law for the Court to decide. *Celle v. Fillipino Reporter Enterprises Inc.*, 209 F.3d 163, 178 (2d Cir. 2000). A statement "will receive full constitutional protection" if it is not a "provably false" statement. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S. Ct. 2695 (1990). "Loose, figurative, or hyperbolic language" is protected by the First Amendment, as it cannot reasonably be interpreted as stating actual, provable facts about an individual. *Id.* The more imprecise the meaning is of a statement, the more likely it will be viewed as protected "opinion." *Id.* For example, in *McCabe v. Rattiner*, 814 F.2d 839, 842 (1st Cir. 1987), the word "scam" was held to be imprecise and therefore constituted protected opinion. In *Wait v. Beck's N.Am. Inc.*, 241 F.Supp.2d 172, 183 (N.D.N.Y. 2003) the court found that "a statement that someone has acted...unethically generally [is] constitutionally protected statements of opinion." *In Biro*, 883 F.Supp.2d at 453, the court held that the use of the terms "shyster," "con man," and finding an "easy mark" is the type of "rhetorical hyperbole" and "imaginative expression" that is

Selman Breitman LLP
ATTORNEYS AT LAW

typically understood as a statement of opinion. *Milkovich*. In *Adelson v. Harris*, 973 F.Supp.2d 471, 493 (SDNY 2013) (applying NV law), the court held that "characterization of Adelson's money as "dirty" and "tainted" is the sort of rhetorical hyperbole and unfalsifiable opinion protected by the First Amendment."

The anti-SLAPP statute protects four categories of speech. NRS 41.637. In this case, the fourth category is relevant and states that "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum, which is truthful or is made without knowledge of its falsehood. NRS 41.637(4). Publishing a summary report regarding the renovation and revitalization of a Mt. Charleston landmark (obviously open to the public) qualifies as related to a matter of public interest. The Executive Summary discusses the resort, surrounding mountain retreat and millions of yearly visitors. Although the summary was directed to investors and lenders, the summary was published to create excitement regarding the restoration of the resort and future possibilities in Mt. Charleston. The information published regarding the Mt. Charleston resort is of public interest especially to the Las Vegas community. There is further public interest given the fact that Plaintiffs are public figures and entities with businesses under the "Siegel" name all across Las Vegas, the West, Southwest and Southern United States.

The Executive Summary was created after countless hours of investigation, research and inspection of the property and community. (See Declaration of Colin Crossman attached as Exhibit B). The summary was created and distributed in good faith to generate financing, publicity and excitement regarding the acquisition and restoration of the Mt. Charleston resort. (See Exhibit B). The investigation found that the property had deteriorated over the years due to a number of factors, including issues with management and employee turn-over. It was defendant's opinion that the property had been poorly managed and had not been updated in quite a while. (See Executive Summary, attached as Exhibit A). Plaintiffs claim these statements and opinions are disparagement, however, there was no malice or disparagement stated, intended or implied. In fact, Plaintiffs acknowledged these same issues during the sale as well. Plaintiffs were quoted in news reports stating that upgrades were always put "on the back burner" and that plans got pushed

Selman Breitman LLP
ATTORNEYS AT LAW

back because "[s]omething always came up and jumped ahead of it." (See news article attached as Exhibit D). Plaintiffs also discussed poor management and the need for major renovations when they assumed ownership in 2008. Again, in public media, Plaintiffs stated that they assumed "operational control of the property to correct long standing management and deferred maintenance issues and increase the hotel's visibility." (See news article, attached as Exhibit E). Plaintiffs stated that prior owners "were unsuccessful in their attempts to operate the property." (See Exhibit E). Plaintiffs also acknowledged the need for significant renovation as they stated "Siegel Group plans a major cosmetic renovation to modernize the facilities and correct deferred maintenance issues. The exterior of the property will undergo a substantial renovation with great attention given to maintaining the resort's current character and architectural features." (See Exhibit E). Years later when Plaintiffs sold the property they acknowledges that these renovations never occurred as other things came up and renovations were always put "on the back burner." (See Exhibit D). Defendant's statements and opinions were good faith statements based on extensive investigation into the property, just as Plaintiffs' statements were. There were issues with the property that were acknowledged by all parties. There was no disparagement or malice involved.

The Nevada Supreme Court has adopted a test for "an issue of public interest" under the statute based on California's test. *Shapiro v. Welt*, Nev. Adv. Op. 6, 389 P.3d 262, 268 (2017). Nevada and California's statutes do not define "public interest" or "public concern." California's statutory preamble states that its provisions "shall be construed broadly" to safeguard "the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code 425.16(a). As such, California courts have interpreted the statute broadly to apply to "**any issue in which the public is interested**." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008). The Nevada Supreme Court has adopted a test for distinguishing public interests from private interests as follows:

(1) "public interest" does not equate with mere curiosity;

(2) a matter of public interest should be something of concern to a substantial number of

people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;

(3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;

(4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and

(5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Shapiro* at 268 (citing *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013)). Under this test, the statements at issue in this case contained in the Executive Summary necessarily pertain to matters of "public interest." The statements pertain to matters of public interest and the good faith communications were made in a place open to the public. *Id.* citing NRS 41.637. As detailed above, the summary pertained to a Mt. Charleston landmark that has been at the entrance of the Mt. Charleston area for nearly four decades. The property and area are an important part of the community and tourists alike. The future of the resort was a public concern especially considering the deterioration, operational and bankruptcy issues in recent past. There was great interest in the renovation plans considering the deterioration and past struggles of the resort. (See multiple news and television reports regarding the sale, past problems and planned renovation of the resort attached as Exhibit F). Also, as discussed above, Plaintiffs are very public figures and entities, especially in Las Vegas. The issue of whether Plaintiffs are public figures is a matter of law for the Court to decide. *Bongiovi v. Sullivan*, 138 P.3d 433, 122 Nev. 556 (Nev., 2006). The United States Supreme Court defines "public figures" as "[t]hose who, by reason of the notoriety of their achievements...seek the public's attention," and therefore, "have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342 (1974); see also, *Wynn v. Smith*, 117 Nev. 6, 16 P.3d 424 (Nev., 2001) (Wynn held to be a public figure.) One does not have to look far to see signs with "Siegel Suites" written on them. This was

Selman Breitman LLP
ATTORNEYS AT LAW

102388.1 1359.44890

no "mere curiosity" over a "private controversy." The summary is directly connected to matters of public interest and concern in the resort and renovation plans and the summary was open to the public. Defendant has met its burden on this aspect of the test as a matter of law.

**C.    The Executive Summary is Truthful or Made Without Knowledge of Falsity.**

There was nothing untruthful about the Executive Summary. The summary states facts and opinions regarding the history of the resort, past struggles and bankruptcy issues. In 2008, the property filed for bankruptcy and the past struggles and deterioration have been well documented. The summary offered facts and opinions regarding the past struggles with the resort and the plans for restoration and other expansion possibilities in the future. The summary contained information widely reported by the news including statements directly from Plaintiffs. (See Exhibits D and E). Plaintiffs acknowledged that widespread renovations never occurred as other things came up and renovations were always put "on the back burner." (See Exhibit D). Defendant investigated the reports and financial records closely in planning the restoration and preparation the summary. States are "precluded from imposing civil liability based on the publication of truthful information contained in official records open to public inspection." *Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 115 Nev. 212, 221, 984 P.2d 164, 169 (1999) (citing *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495, 95 S.Ct. 1029 (1975)). As the Cox court explained, "[p]ublic records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media." *Cox*, 420 U.S. at 495. Statements were truthful facts and/or opinions of Defendant based on their extensive research and evaluation that were made without knowledge of any falsity.

At the very least, Defendant has met their initial burden of demonstrating that they did not publish the Executive Summary with "knowledge of its falsehood." NRS 41.637. The information was obtained from financial reports, public records, news outlets, investigation and the Plaintiffs' themselves. Defendant has made the initial showing necessary to shift the burden to Plaintiffs to demonstrate that they are likely to prevail on their claims. *Delucchi v. Songer*, 398 P.3d 826, 833 (Nev. 2017).

Selman Breitman LLP
ATTORNEYS AT LAW

10

**D. Plaintiffs Cannot Demonstrate a Probability of Success on Any Cause of Action.**

The second step in evaluating an anti-SLAPP Motion to Dismiss requires that the Court "determine whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim." NRS 41.660(3)(b). Plaintiffs cannot prevail on their claims or obtain any of the relief they requested.

To succeed in a claim for business disparagement, the plaintiff must prove: (1) a false and disparaging statement, (2) the unprivileged publication by the defendant, (3) malice, and (4) special damages. *Clark County School District v. Virtual Education Software, Inc.,* 125 Nev. 374, 213 P.3d 496 (2009). Notably, the principal differences between defamation per se and business disparagement concern the elements of intent and damages. As opposed to defamation, which merely requires some evidence of fault amounting to at least negligence, business disparagement requires something more, namely malice. *Id.* Malice is proven when the plaintiff can show either that the defendant published the disparaging statement with the intent to cause harm to the plaintiff's pecuniary interests, or the defendant published a disparaging remark knowing its falsity or with reckless disregard for its truth. *Id.*; *Pegasus v. Reno Newspapers, Inc.,* 118 Nev. 706, 722, 57 P.3d 82, 92-93 (2002); Restatement (Second) of Torts § 623A (1977).

Even if Plaintiffs had properly brought their claim for business disparagement, they could not prevail as a matter of law. The claim would still be dismissed because Plaintiffs cannot satisfy several elements of the cause of action. There is no evidence of any malice by Defendant. To establish malice, Plaintiffs must prove either that Defendant published a disparaging statement with the intent to cause harm to Plaintiffs' pecuniary interests, or Defendant published a disparaging remark knowing its falsity or with reckless disregard for its truth. *Pegasus v. Reno Newspapers, Inc.,* 118 Nev. 706, 722, 57 P.3d 82, 92-93 (2002). As stated above, Plaintiffs made several or the same statements themselves on multiple occasions. (See Exhibits D and E). Plaintiffs have no evidence of any such conduct by Defendant and there is no evidence of Defendant making or publishing any disparaging statements at all.

11

Selman Breitman LLP
ATTORNEYS AT LAW

102388.1 1359.44890

Plaintiffs also cannot satisfy the damages element of business disparagement. Unlike defamation, proof of special damages is an essential element of business disparagement. *Hurlbut v. Gulf Atlantic Life Ins. Co., 749 S.W. 2d 762, 767 (Tex. 1987).* Further, in a business disparagement claim, the plaintiff must prove that the defendant's disparaging comments are the proximate cause of the economic loss. *Id.; Clark County.* Therefore, a cause of action for business disparagement requires the plaintiff to set forth evidence proving economic loss that is attributable to the defendant's disparaging remarks. *Clark County.* Lastly, a plaintiff may show evidence of a general decline of business instead of the loss of specific sales, but the general decline of business must be the result of the disparaging statements and the plaintiff must eliminate other potential causes. *Clark County.* Here, Plaintiffs have no evidence proving Plaintiffs suffered an economic loss attributable to Defendant's alleged disparaging remarks. Any alleged damages under a business disparagement cause of action would be purely speculative in nature and therefore irrelevant and not recoverable. N.R.S. 48.025; N.R.S. 48.015; *Watt v. Nevada Central Railroad Co.*, 23 Nev. 154, 157, 44 P.423 (1986); *Knier v. Azores Constr. Co., 78 Nev. 20, 24, 368 P.2d 673, 675 (1962)* (discussing the rule against uncertain damages). Consequently, Plaintiffs would be unable to prove the essential elements of a business disparagement cause of action even if the court allowed them to proceed.

Plaintiffs also allege a cause of action for Injunctive Relief. Plaintiffs cannot demonstrate a probability of success on this cause of action as well. In order to obtain an injunction, plaintiffs must demonstrate: (1) a likelihood of success on the merits of their claims; (2) a reasonable probability that if the defendants' conduct is allowed to continue, it will cause irreparable harm for which there is an inadequate remedy at law; (3) the threatened injury to plaintiffs absent issuance of an injunction outweighs any potential harm that the injunction may cause the defendants; and (4) the granting of the injunction is consistent with the public interest. See *City of Sparks v. Sparks Mun. Court*, 302 P.3d 1118, 1124 (Nev. 2013) (en banc); *Univ. & Cmty. Coll. Sys. of Nevada v. Nevadans for Sound Gov't,* 120 Nev. 712, 721, 100 P.3d 179, 187 (2004); *Boulder Oaks Cmty. Ass'n v. B&J Andrews Enters. LLC*, 125 Nev. 397, 403, 215 P.3d 27, 31 (2009).

12

A court will not issue an injunction "to restrain an act which does not give rise to a cause of action." *State Farm Mut. Auto. Ins. Co. v. Jaibros Inc.*, 109 Nev. 926, 928, 860 P.2d 176, 178 (1993) ("It is axiomatic that a court cannot provide a remedy unless it has found a wrong."). The party moving for the injunction bears the burden of proof. *S.O.C., Inc. v. Mirage Casino-Hotel*, 117 Nev. 403, 408, 23 P.3d 243, 246 (2001). It is well established that a motion for an injunction should be denied "in the absence of testimony or exhibits establishing the material allegations of the complaint." *Coronet Homes v. Mylan*, 84 Nev. 435, 437, 442 P.2d 901, 902 (1968) (citations omitted). Here, Plaintiffs' allegations, unsupported by evidence, is not enough to support the issuance of an injunction. This is especially true when the relief sought attempts to refrain Defendant's speech.

Plaintiffs' requested injunctive relief amounts to an unconstitutional restraint of free speech. Plaintiffs are seeking an injunction enjoining Defendant from "disseminating the Executive Summary, which contains numerous false and defamatory statements about Plaintiffs." (See Exhibit C). Not only is the requested relief vague, ambiguous and overly broad, Plaintiffs are asking this Court to restrict Defendant's speech. *Id.* But any possible harm Plaintiffs face from purported defamatory statements is not nearly so great as to support a prior restraint against speech.

The United States Supreme Court has often recognized that "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." See, e.g., *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Because of the First Amendment's heavy presumption against prior restraints, the United States Supreme Court has long held that equity will not enjoin defamation. *Id.*; see also *American Malting Co. v. Keitel*, 209 F. 351, 354 (2d Cir. 1913); *Kramer v. Thompson*, 947 F.2d 666, 677-78 (3d Cir. 1991); *Community for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir. 1987) ("The usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages."). While courts are mindful that vile, hurtful speech has the capacity to cause real and significant injury, the traditional and bright-line rule against such injunction is founded on

13

the idea that the private harm suffered by victims of the speech is a lesser harm than the harm that would be done to our constitutional traditions if courts were to carve out exceptions to the traditional rule and enjoin speech. *Id.*; see also *Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087 (C.D. Cal. 2012). Thus, courts routinely hold that the only remedy for defamation is an action for damages. See, e.g., *Nebraska Press Ass 'n*, 427 U.S. at 559, 96 S.Ct. at 2791. Plaintiffs' cause of action for business disparagement fails, and likewise, Plaintiffs cause of action for Injunctive Relief must fail as well. For these reasons, Plaintiffs cannot meet their burden of demonstrating a probability of prevailing on either of their claims and this Court should grant the instant special motion to dismiss.

**E.    Defendant is Entitled to an Award of Attorney's Fees.**

Nevada law provides that, after granting a special motion to dismiss pursuant to NRS 41.660, the Court shall award "reasonable costs and attorney's fees to the person against whom the action was brought" and may additionally award "an amount of damages up to $10,000.00 to the person against whom the action was brought." NRS 41.670(1)(a)-(b). A separate motion detailing fees and costs expended by Defendant shall be submitted if this Court grants this motion.

## III.    CONCLUSION

For the Foregoing reasons, Defendant MT. CHARLESTON LANDLORD LLC respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice pursuant to NRS 41.660.

DATED: December 3, 2018          SELMAN BREITMAN LLP

By:    /s/ Eric O. Freeman
       ELAINE K. FRESCH
       NEVADA BAR NO. 9263
       GIL GLANCZ
       NEVADA BAR NO. 9813
       ERIC O. FREEMAN
       NEVADA BAR NO. 6648
       3993 Howard Hughes Parkway, Suite 200
       Las Vegas, NV 89169-0961
       Telephone: 702.228.7717
       Facsimile: 702.228.8824
       Attorneys for Defendants COLIN CROSSMAN,
       DEANNA CROSSMAN, and MT.
       CHARLESTON LANDLORD LLC

Selman Breitman LLP
ATTORNEYS AT LAW

14

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Selman Breitman LLP and, pursuant to:

☒ **BY E-MAIL/ELECTRONIC SERVICE:** N.R.C.P. 5(b), I caused the foregoing document to be served upon the persons designated by the parties in the E-Service master List for the above-referenced matter in the Eighth Judicial District Court eFiling System in accordance with the mandatory electronic service requirements of Administrative Order 14-2 and the Nevada Electronic Filing and Conversion Rules.

a true and correct copy of the above and foregoing **DEFENDANT MT. CHARLESTON LANDLORD LLC'S SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660 (ANTI-SLAPP STATUTE)**, was served this 3 day of December 2018.

_____
CRYSTAL MARTIN
An Employee of Selman Breitman LLP

Selman Breitman LLP
ATTORNEYS AT LAW

15

102388.1 1359.44890

# EXHIBIT A

# Hotel in Mt. Charleston, NV

**Mt. Charleston Resort**
**2755 Kyle Canyon Rd**
Mount Charleston, Nevada 89124



**The project**

Acquisition and restoration of a boutique hotel with 62 rooms, gift shop, fitness center, bar/lounge with gaming, restaurant and expansion possibilities. The seller has been treating this 1980's era mountain lodge-style hotel as an ultra-low-end property, attempting to fit it in with his other rent-by-the-week properties in the greater Las Vegas area.

**Loan Request:**

A $4,550,000 loan is requested to purchase this boutique hotel property, with an additional $6,500,000 requested for restoration and loan interest reserve, 2 year term.

Alternatively, just the acquisition funds of $4,550,000, interest only, 2 year term. We have local NV alternatives for construction investment if that is more desirable to lender.

**Evolution:**

The Mount Charleston Resort has only had three owners since it was built in 1982-84 by Robert Bigelow. Robert Bigelow is the founder and President of Budget Suites of America, a chain of 19 budget extended stay hotels. He owned and operated the Mount Charleston Hotel from 1982-2004. He sold it to Great American Capital in 2004. The property filed for bankruptcy in 2008 and the mortgage was assumed by Siegel Suites in a 50-50 partnership with Great American Capital. Siegel Suites is the managing partner. Siegel Suites is another low-cost budget hotel chain with 26 extended stay hotels in Las Vegas owned by Stephen Siegel. In 2008, Siegel Suites acquired the interest in three boutique hotels and claimed he was going to operate them as luxury boutique hotels. They included The Resort at Mount Charleston, Rumors Hotel and Casino (an $18 million property across the street from the Hard Rock Hotel), and The Artisan Hotel (a $3.5 million gay and lesbian hotel on Sahara and the I-15 freeway in Las Vegas). Siegel recently sold the Rumors hotel for $18 million and has tried to sell the Mount Charleston Resort and the Artisan for the past three years. The Siegel organization was not experienced or structured to operate resorts or casinos.

Since the acquisition by Siegel Suites, the Resort at Mount Charleston has been poorly managed, poorly maintained and had virtually no marketing to reach the 42 million tourists who visit Las Vegas annually or the 1.5 million visitors that visit Mount Charleston's four primary tourist destinations: The Mount Charleston Resort, The Mount Charleston Lodge (25 rental cabins and a restaurant), the Mount Charleston Ski Resort and the new Mount Charleston Visitor's Center.

The visitor's center is owned and operated by the US Forest Service. It was built at a cost of $10 million in addition to $15 million to acquire the 128 acres adjacent to the Mount Charleston Resort which was formerly a golf course.

The visitor's center opened in December 2014 and had 48,000 visitors in 2015 and 60,000 visitors in 2016. They estimated 100,000 visitors in 2017. It is adjacent to the Mount Charleston Resort and Siegel has made no effort to capitalize on these tourists.

Siegel has had 18 different managers of the property in 9 years. The managers all quit or are fired because the Siegel group is unwilling to commit the necessary funds to properly market or maintain the property. Siegel has treated the resort like a budget motel and have spent no money on amenities. The spa and gym have been closed. There is no swimming pool or jacuzzi, and they have a high turn-over of employees because of their poor management and understaffing.

The Resort has long term contracts for water, sewer, propane, and electricity. It has no mineral rights. It has 5.7 acres of land and 55 parking spaces.

Even with the above issues, revenue was 2.6 Mil by 2016, on an ADR of $83.89 and RevPAR of $51.90. Their current marketing strategy, while adequate in resources allocated, leans heavily (85%) on direct mail, which typically has very low ROI for hospitality.

**Restoration:**

This project involves the acquisition of an existing, operating property, The Resort at Mount Charleston, which is just outside Las Vegas, NV. The property is the only hotel on the mountain, and one of only two lodging options that serve the ski resort (the other being 20 small log cabins). The property has fallen into disrepair, and is being managed well below its full potential. Even given the property's current state, it is holding a surprisingly high occupancy, and is doing sufficient business to be cash flow positive at the acquisition price.

After renovation, the property's ADR and RevPAR is expected to increase to the mid to upper $100s. We expect that the increase in rate will not impact the occupancy in any appreciable manner, as the hotel will be offering a much better value than currently. Also, the current management is leaving considerable revenue on the table by contracting with third parties to operate the bar and gaming. Bringing those two in-house will add ~$100k per month to top-line revenue.

There are additional expansion opportunities, since the property is one of a handful of commercially zoned parcels on the mountain. Furthermore, there isn't much undeveloped land available for purchase, since >90% of the mountain is owned by the Federal Bureau of Land Management. We are exploring the ability to add a gas station or small stop-and-shop to the existing (unused) outbuilding on the site, which would add considerable revenue as well.

Taking a broader market view, the Las Vegas hospitality market is as strong as ever. Market occupancies approach 90%, which is driving excellent RevPAR growth. The property has been the beneficiary of this demand growth. By renovating the property, it can be put into a position that captures even more of this market.

We have included the recent Las Vegas hospitality market study (released October 2017) in the attached files.

We propose a renovation that elevates this property from its current down-market state to a mid-scale or lower-upscale market.

Improvements include significant upgrades to the exterior space (renovated wedding area, addition of a pool, and decks off the spa, bar, and restaurant), new FF&E throughout, new flooring, painting, plumbing, and mechanical. These improvements will be phased to minimize business impact.

The buyers anticipate increased revenue resulting from:

- Hiring a successful event manager to promote more restaurant and bar sales
- Modernizing the sales strategy to take advantage of an online presence
- Obtaining a gaming license and bringing the slot-machine revenue in-house. This is anticipated to bring in $10k - $20k per week.

- Las Vegas is growing rapidly, and announced the move of the Oakland Raiders to Las Vegas is anticipated to rapidly grow the already strong hospitality market. Las Vegas also recently scored an NHL team, and may be in the running for an MLB expansion.
- Nevada passed recreational marijuana, with dispensaries opening for recreational sales July 1st, 2017. New dispensaries will be allowed starting in November 2018.

**The team:**

**Colin R Crossman; Chief Executive Officer**

Colin received his undergraduate education at Carnegie Mellon University, and an MS and JD from Duke University. He has a background in property management and residential remodeling. In addition, he co-founded PhD Posters, LLC, an online printing service catering to academic communities around the country. His mix of skills enables him to understand the business of Rhea Hospitality from all perspectives and direct it in the right direction over the coming years.

**Deanna Crossman; Chief Operating Officer:**

Deanna has her undergraduate degree from the California Institute of Technology, and an MS from Duke University, as well as 10 years' experience as a general contractor and property manager. She has an unlimited building contractor's license with the state of North Carolina and oversaw the restoration and construction of the King's Daughters Inn in Durham, and the construction of the Mayton Inn in Cary, NC. Since 2009, she has served as the General Operations manager for all properties.

**Joint Experience:**

Their joint experience with the successful management of 32 residential rental units, the 17-room King's Daughters Inn, and the 45-room Mayton Inn gives them the perfect background for this position. Crossman Properties finished liquidating all assets in 2016, selling into Durham's high-flying residential real estate market.

In 2008, Colin and Deanna acquired The King's Daughters Home in Durham, NC, and proceeded to renovate it into the King's Daughters Inn, opening in 2009. The King's Daughters Inn was the first new hospitality property in Durham in over a decade, and was quickly integrated into the market - even considering the global financial situation at the time. By leveraging their extensive contacts at Duke University, they rapidly made the property an integral part of the community.

When they opened the King's Daughters Inn, Colin and Deanna possessed basic experience in the hospitality sector. They quickly learned more, operating the property without any staff besides the two of them for the first six months. By year three, they had grown the King's Daughters Inn's operations and reputation to such a level that the Town of Cary approached them to construct a boutique hotel as an anchor property to a total downtown restoration.

The Mayton Inn opened to much fanfare in downtown Cary in February of 2016. Colin and Deanna's expert management skills allowed the Mayton Inn to rapidly become the downtown anchor that the Crossmans and the Town initially envisioned.

Now that the Mayton Inn is reaching its potential, the Crossmans are looking to expand once again. They have been approached by the Towns of Wake Forrest, Shalotte, Rocky Mount, and Hendersonville to explore potential opportunities in each municipality. They find the Resort at Mount Charleston to be the best next target to continue a reasonable supported grow with maximum return.

**Financial performance:**

According to the information provided by the seller, from 2014 to 2017, average occupancy increased from 49.2% to 63.2%; the revenue improved from $ 2.06 Mil to $2.7 Mil; while the yearly NOI improved from $39k to $517k.

The property performed at those numbers despite the significantly negative effect on rate that its level of maintenance and quality supports. Maintaining the current situation, we expect that the hotel will be able to continue to support these numbers.

However, our plan includes several elements that are anticipated to vastly increase top-line revenues, at a minimal or modest impact on COGS and expenses.

- First, by investing the capital to renovate and restore the property to an upper-midscale to upscale class, we believe that RevPAR can be increased to $130 within 2 years, resulting in a top-line room revenue of $2.9 Mil (up from $1.2 Mil in 2017).
- In addition, bringing the gaming revenue and increased bar revenue in house is expected to add an additional $750k when fully implemented. This increases the top-line revenue from $2.6 Mil to $5.3 Mil by the end of year 2.

**Exit Strategy:**

The buyer's strategy considers the following possible scenarios:

- Refinancing with a low rate and favorable terms commercial loan to pay-off the bridge loan once the project is stabilized, estimated in 24 months.
- Upon success of the previously mentioned renovations and actions, sell the property for a profit.

**EXHIBIT B**

ELAINE K. FRESCH
NEVADA BAR NO. 9263
GIL GLANCZ
NEVADA BAR NO. 9813
ERIC O. FREEMAN
NEVADA BAR NO. 6648
SELMAN BREITMAN LLP
3993 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169-0961
Telephone:     702.228.7717
Facsimile:     702.228.8824
Email:          efresch@selmanlaw.com
Email:          gglancz@selmanlaw.com
Email:          efreeman@selmanlaw.com

Attorneys for Defendants COLIN CROSSMAN,
DEANNA CROSSMAN, and MT.
CHARLESTON LANDLORD LLC

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| THE SIEGEL GROUP NEVADA, INC., a Nevada Corporation; GARRETT CAPITAL LLC doing business as ARTISAN HOTEL BOUTIQUE, a Nevada limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>COLIN CROSSMAN, an individual; DEANNA CROSSMAN, an individual; MT CHARLESTON LANDLORD LLC, a Nevada limited liability company; IPG INVESTMENTS LLC, a Washington limited liability company; DOE DEFENDANTS I-X, unknown individuals; and ROE COMPANIES XI-XX, unknown entities,<br><br>        Defendants. | Case No. A-18-781311-C<br>Dept.:     32<br><br>**DECLARATION OF COLIN CROSSMAN** |

I, COLIN CROSSMAN, declare as follows:

102398.1 1359.44890

Selman Breitman LLP
ATTORNEYS AT LAW

1. I am over the age of eighteen, of sound mind, and give the following declaration.

2. I am the Chief Executive Officer of MT Charleston Landlord LLC and maintain an ownership interest in MT Charleston Landlord LLC.

3. I have personal knowledge of all matters stated herein and would be able to competently testify to them.

4. I was directly involved in the research, investigation, creation, and distribution of the five-page Executive Summary attached as Exhibit A to Defendant Mt. Charleston Landlord LLC's Special Motion to Dismiss Pursuant to NRS 41.660 (Anti-SLAPP Statute).

5. Significant research and investigation was conducted in preparing the summary, including but not limited to, analyzing financial records, operating statements, sales and marketing budgets, corporate history, bankruptcy, and renovation plans. I was also involved with damage and deterioration assessments, contractor and architecture consultations, management and staffing assessments, and interviewing and researching management and staff. Additionally, I analyzed the conclusions and observations of property inspections that were undertaken during our due diligence in order to proceed with efforts to obtain financing for the purchase and renovation of the property.

6. The summary was created and distributed in good faith as a summary of facts and opinions regarding the Mt. Charleston resort, the property's history, planned acquisition, restoration plans, the Las Vegas market, and perceived problems with the prior operations, management and marketing.

7. The summary contained truthful statements and opinions and were made without knowledge of any falsity. Statements and opinions were not disparaging, were made without malice and there was no intention to cause any harm.

8. While mainly directed to potential investors, lenders, brokers and investment firms, the summary was also publically accessible and circulated widely for publicity and

2

102398.1 1359.44890

marketing reasons due to the historic nature of the property and significant public interest.

9. As expected, the past problems, acquisition and planned renovations of the property addressed in the summary created additional public interest and continued to grow in public interest, including media reports, interviews, and TV and internet stories.

10. I declare the foregoing is true and correct.

DATED: December 3, 2018

_____

Colin Crossman

Selman Breitman LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

102398.1 1359.44890

3

# EXHIBIT C

Electronically Filed
9/18/2018 5:55 PM
Steven D. Grierson
CLERK OF THE COURT

1   THE SIEGEL GROUP
    SEAN D. THUESON (NVBN 08690)
2   KRISTINE A. O'QUINN (NVBN 13556)
    3790 Paradise Road, Suite 250
3   Las Vegas, Nevada 89169
    Telephone: (702) 947-8330
4   Facsimile: (702) 947-8317
    sthueson@siegelcompanies.com
5   koquinn@siegelcompanies.com
    *Attorneys for Plaintiffs,*
6   *The Siegel Group Nevada, Inc. and Garrett Capital LLC*

7                    **EIGHTH JUDICIAL DISTRICT COURT**

8                         **CLARK COUNTY, NEVADA**

9   THE SIEGEL GROUP NEVADA, INC., a          CASE NO.    A-18-781311-C
    Nevada corporation; GARRETT CAPITAL       DEPARTMENT  Department 32
10  LLC doing business as ARTISAN HOTEL
    BOUTIQUE, a Nevada limited liability
11  company,                                  **COMPLAINT**

12                          Plaintiffs,        **(Exempt from Arbitration – Amount in
                                               Controversy Exceeds $50,000.00;**
13  v.                                         **Injunctive Relief Sought)**

14  COLIN CROSSMAN, an individual; DEANNA
    CROSSMAN, an individual; MT
15  CHARLESTON LANDLORD LLC, a Nevada
    limited liability company; IPG
16  INVESTMENTS LLC, a Washington limited
    liability company; DOE DEFENDANTS I-X,
17  unknown individuals; and ROE COMPANIES
    XI-XX, unknown entities,
18
                            Defendants.
19

20          Plaintiffs THE SIEGEL GROUP NEVADA, INC. and GARRETT CAPITAL LLC d/b/a

21  ARTISAN HOTEL BOUTIQUE, as and for their Complaint against Defendants COLIN

22  CROSSMAN, DEANNA CROSSMAN, MOUNT CHARLESTON LANDLORD LLC, and IPG

23  INVESTMENTS LLC, hereby complain and allege as follows:

24                          **JURISDICTION AND VENUE**

25          1.      This Court has jurisdiction over this matter because the acts and omissions of the

26  Defendants occurred in Clark County, Nevada and Plaintiffs' damages exceed $15,000.00.

27          2.      Venue is proper in Clark County, Nevada because the acts and/or omissions giving

28  rise to the claims herein occurred in Clark County, Nevada.

THE SIEGEL GROUP

A Division of the Siegel Group Nevada Inc.
3700 PARADISE ROAD • SUITE 250 • LAS VEGAS, NEVADA 89169
PHONE (702)952-1939 • FAX (702) 947-8317

### THE PARTIES

3.     Plaintiff The Siegel Group Nevada, Inc. ("TSG") is now, and was at all times relevant hereto, a Nevada corporation lawfully doing business in Clark County, Nevada.

4.     Plaintiff Garrett Capital, LLC d/b/a Artisan Hotel Boutique (the "Artisan") is now, and was at all times relevant hereto, a Nevada limited liability company lawfully doing business in Clark County, Nevada.

5.     On information and belief, Defendant MT Charleston Landlord LLC ("MTC Landlord") is a Nevada limited liability company doing business in Clark County, Nevada.

6.     On information and belief, Defendant Colin Crossman ("C. Crossman") is a resident of North Carolina, and is the Chief Executive Officer of MTC Landlord.

7.     On information and belief, Defendant Deanna Crossman ("D. Crossman") is a resident of North Carolina, and is the Chief Operating Officer of MTC Landlord.

8.     On information and belief, Defendant IPG Investments LLC ("IPG") is a Washington limited liability company doing business in Clark County, Nevada.

9.     Pursuant to Rule 10(a) of the Nevada Rules of Civil Procedure, *Nuremberger Hercules-Werke GMBH v. Virostek*, 107 Nev. 873, 822 P.2d 1100 (1991), and other applicable law, Plaintiffs sue the defendants designated herein as DOE and ROE companies, the true names and capacities of whom are unknown to Plaintiffs at this time. Plaintiffs are informed and believe, and thereon allege, that defendants designated as DOE and ROE herein were in some manner involved in, and/or are responsible for, the acts, omissions, events, happenings, and/or offenses alleged in this Complaint, and/or directly and proximately caused or are responsible for the damages and/or relief sought herein, including, without limitation, Defendants' publication of false and defamatory statements concerning TSG and the Artisan. Plaintiffs will seek leave of Court to amend this Complaint to name the defendants designated as DOE and ROE herein when their true names and capacities are ascertained.

///

///

///

## GENERAL ALLEGATIONS

10.     TSG is a real estate investment and management corporation that manages over sixty (60) entities operating as extended-stay hotels, multi-family apartment complexes, restaurants, and commercial/retail spaces (the "Siegel Entities").

11.     TSG is involved in the business of acquiring, developing, and managing real estate assets throughout the United States.

12.     Many of the Siegel Entities operate as multi-family flexible-stay apartment complexes under the brand name "Siegel Suites".

13.     The Artisan is a Siegel Entity, and operates as a boutique hotel in Las Vegas, Nevada.

14.     The hotel property located at 2755 Kyle Canyon Road, Mount Charleston, Nevada 89124 (the "MTC Resort") was owned by Mt. Charleston Resort, LLC, doing business as The Resort on Mount Charleston, through June 2018. In June 2018, Mt. Charleston Resort, LLC sold the MTC Resort to Defendant MTC Landlord (the "MTC Resort Transaction").

15.     On information and belief, C. Crossman, D. Crossman, and MTC Landlord retained IPG to assist with retaining financing for the MTC Resort Transaction.

16.     On information and belief, in connection with seeking financing for the MTC Resort Transaction, C. Crossman, D. Crossman, MTC Landlord, and IPG prepared a five-page "Executive Summary" regarding MTC Landlord's acquisition of the MTC Resort (the "Executive Summary"). A copy of the Executive Summary is attached to this Complaint as **Exhibit 1**.

17.     The Executive Summary includes numerous false and defamatory statements regarding the Siegel Entities branded as the "Siegel Suites" and the Artisan, including but not limited to numerous statements that "Siegel Suites" poorly managed the MTC Resort and that the Artisan is "a gay and lesbian hotel."

18.     At no point during its operation did the MTC Resort operate as a "Siegel Suites".

19.     On information and belief, Defendants published the Executive Summary to numerous lenders, brokers, and investment firms who TSG and the Artisan regularly conduct business with.

20.     As a direct and proximate result of Defendants' publication of the Executive Summary, Plaintiffs have been damaged in an amount in excess of $15,000.00, the exact amount to be proven at trial.

## FIRST CAUSE OF ACTION
### (Business Disparagement)

21.     Plaintiffs hereby incorporate the allegations contained in all of the preceding paragraphs as if fully set forth herein.

22.     Defendants made false and defamatory statements concerning TSG, the Siegel Entities, and the Artisan.

23.     On information and belief, Defendants published the false and defamatory statements to third parties, including numerous lenders, brokers, and investment firms who TSG and the Artisan regularly conduct business with.

24.     On information and belief, Defendants published the disparaging statements with reckless disregard for the truth of the statements.

25.     Defendants were not privileged or justified in making the disparaging statements.

26.     TSG and the Artisan have suffered damages as a result of the defamatory statements, including the loss of business, loss of income, and loss of goodwill / reputation.

27.     As a direct and proximate result of Defendants' actions and omissions as set forth herein, Plaintiffs have been injured in an amount in excess of $15,000.00, the exact amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Injunctive Relief)

28.     Plaintiffs hereby incorporate the allegations contained in all of the preceding paragraphs as if fully set forth herein.

29.     NRS 33.010 provides that an injunction is appropriate "when it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consist in restraining the commission or continuance of the act complained of, either for a limited period or perpetually."

Page 4 of 5

THE SIEGEL GROUP
A Division of the Siegel Group Nevada Inc.
3790 PARADISE ROAD • SUITE 250 • LAS VEGAS, NEVADA 89169
PHONE (702) 952-1939 • FAX (702) 947-8317

30.     On information and belief, Defendants are disseminating the Executive Summary, which contains numerous false and defamatory statements about Plaintiffs, to various lenders, brokers, and investment companies, thereby causing Plaintiffs damages.

31.     As such, Plaintiffs are entitled to an injunction preventing and prohibiting the publication and dissemination of the Executive Summary.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.     For an award of compensatory damages in an amount to be proven at trial;

2.     For an award of punitive damages in an amount to be determined at trial;

3.     For an injunction enjoining Defendants from publishing or disseminating the Executive Summary;

4.     For pre-judgment and post-judgment interest, at the highest rate permitted pursuant to contract and/or applicable law;

5.     For costs of collection and suit, including reasonable attorneys' fees, pursuant to contract and/or applicable law; and

6.     For such other and further relief as the court deems just and proper.

RESPECTFULLY SUBMITTED this 18th day of September, 2018.

THE SIEGEL GROUP

By:    _/s/ Sean Thueson_
          SEAN D. THUESON, ESQ.
          KRISTINE A. O'QUINN, ESQ.
          3790 Paradise Road, Suite 250
          Las Vegas, Nevada  89169
          _Attorneys for Plaintiffs_

**EXHIBIT D**

SUBSCRIBE (https://checkout.reviewjournal.com/subscriptionpanel)     SIGN IN / OUT (https://account.reviewjournal.com)

Already a print subscriber? **Register here (https://account.reviewjournal.com/Login.aspx)** for unlimited digital access. Need help? Call 702-383-0400 from 6am to 5pm PT.

Home (/) >> Business (https://www.reviewjournal.com/business/)

# Resort on Mount Charleston sold to North Carolina couple for $4.8M



Resort on Mount Charleston Sold for $4.8 million (Madelyn Reese/Las Vegas Review-Journal)

(https://www.reviewjournal.com/staff/eli-segall/)
By **Eli Segall (https://www.reviewjournal.com/staff/eli-segall/)**
Las Vegas Review-Journal
June 28, 2018 - 10:02 pm



More In Business (https://www.reviewjournal.com/business/)

SUBSCRIBE (https://checkout.reviewjournal.com/subscription/panel)     SIGN IN / OUT (https://account.reviewjournal.com/)

Resort on Mount Charleston sold to North Carolina couple for $4.8M&body=You may be interested in the following

Updated June 29, 2018 - 4:17 pm

North Carolina hoteliers Colin and Deanna Crossman have expanded into Las Vegas' nearby mountain community.

The Crossmans acquired the Resort on Mount Charleston, some 40 miles northwest of the Strip, from The Siegel Group. The Las Vegas real estate firm announced this week that it sold the 64-room hotel for $4.8 million.

The new owners are planning a big menu of changes for the 1980s-era property on Kyle Canyon Road, which faced foreclosure after the economy crashed and, according to the seller, has a strong meetings business but ended up "on the back burner" for upgrades.

"It has so much untapped potential," Deanna Crossman said.

They also plan to rename it The Retreat on Charleston Peak, Colin Crossman confirmed.

As the owners of Rhea Hospitality (https://boutiquenc.com), the Crossmans operate The King's Daughters Inn, a 17-room hotel in Durham, North Carolina, and The Mayton Inn, a 45-room hotel in Cary, North Carolina. The couple wanted to expand "faster than we could by ourselves," Deanna Crossman said, so they raised money from investors and shopped for acquisitions.



(https://jadserve.postrelease.com/trk?ntv_at=3&ntv_ui=cfb533d0-ff72-4233-b73a-34b6of546ba6)

SPONSORED CONTENT

**Some health plans are a breath of fresh air.** (https://jadserve.postrelease.com/trk?ntv_at=3&ntv_ui=cfb533d0-ff72-4233-b7...)

At first they dismissed the idea of buying a hotel in Las Vegas, figuring that it was too far and that they didn't know the market. But there are daily nonstop flights from Raleigh, North Carolina, to Las Vegas, she said, and locals know residents are the clientele, she said, though locals often head to Mount Charleston to ski in the winter, escape the summer heat and "get back to nature." Trails that can be accessed at the nearby Spring Mountains Visitor Gateway run behind the hotel.

The Crossmans want to overhaul the menus, expand the bar hours and make lots of physical upgrades to the building. "It needs a lot of love," Deanna Crossman said.

Their plans include new furniture, bathrooms, paint and flooring in the guest rooms. According to Colin Crossman, the hotel carpeting is "just disgusting," with some sections held together by duct tape.

"It's time to bring it into a new era, a new chapter in its life, and we're pretty excited about that," Deanna Crossman said.

In 2008, Siegel Group founder Steve Siegel acquired a 50 percent ownership stake in the hotel and took over its management. But by 2012, the resort was headed for a foreclosure sale, Clark County records show.

Siegel (https://www.reviewjournal.com/business/boutique-hotel-rumor-east-of-las-vegas-strip-sells-for-18m/) — known for his Siegel Suites chain of low-priced apartments — said the foreclosure was tied to his partner's loan, which he said was obtained before he acquired a stake in the hotel. He bought the debt on the property and acquired full ownership around the time the foreclosure loomed.

He said that the hotel at one point was "really struggling" but that he beefed up its marketing and focused mainly on building its events business.

The resort hosted a lot of big gatherings, he said, and he planned to expand the hotel. But "we just got really busy. It kind of always got put on the back burner."

Siegel added that at any given time, his group was doing 15 to 20 other projects in Las Vegas and other cities.

"Something always came up and jumped ahead of it," he said.

Contact Eli Segall at esegall@reviewjournal.com or 702-383-0342. Follow @eli_segall (https://twitter.com/eli_segall) on Twitter.

**Rhea Hospitality hotels**

More in Business (https://www.reviewjournal.com/business/)


T-Mobile Arena using customer data to (https://www.reviewjou


Sisolak to name 2 appointments to Nevada Gaming Control Board


Las Vegas hospital widens HIV testing on World AIDS Day


Big Las Vegas real estate deals have made 702-383-0400 from December



Colin and Deanna Crossman, who just purchased the Resort on Mount Charleston, own two other hotels, both in North Carolina. They are:

**3 Daughters Inn**

Durham, N.C.

17 rooms

Built in 1925

Former women's retirement home

**The Mayton Inn**

Cary, N.C.

45 rooms

Developed by the Crossmans, opened in 2016

Project financing included $2.4 million in loans from city of Cary

**2275 Kyle Canyon Rd**

2275 Kyle Canyon Rd, Mt Charleston, NV 89124        Directions    Save

View larger map

5 Kyle Canyon Road

Google

Map · Report a map error

ADVERTISING

SIMILAR STORIES

# EXHIBIT E

# LAS VEGAS SUN

# Mount Charleston Hotel sold as another goes bankrupt

## Citing mismanagement, new group poised to rebrand property

**By The Home News**

Thursday, Dec. 11, 2008 | 11:09 a.m.

One Las Vegas-area hotel has been sold and another has filed for bankruptcy protection.





The Artisan Hotel & Spa LLC, on Interstate 15 and Sahara Avenue, filed a Chapter 11 bankruptcy petition on Tuesday. It listed assets and debt of more than $10 million apiece. The boutique hotel has just 64 rooms.

Among its creditors, Citizens Bank is owed $1.8 million and NV Energy, formerly Nevada Power Co., is owed $50,000.

Separately, real estate developer Siegel Group Nevada Inc. said Wednesday it formed a joint venture with Great American Capital to acquire the Mount Charleston Hotel. Terms were not disclosed.

Siegel said it will immediately assume operational control of the property to correct long-standing management and deferred maintenance issues and increase the hotel's visibility. A marketing campaign will be launched and the property rebranded as The Resort on Mount Charleston.

The hotel, also with 64 rooms, is about 35 minutes northwest of downtown Las Vegas in the Toiyabe National Forest.

"Since being constructed, the prior owners of the Mount Charleston Hotel had never been able to successfully market or bring in the amenities needed to attract customers and were unsuccessful in their attempts to operate the property. The Siegel Group's proven ability at repositioning troubled assets as well as its expertise in the areas of management, marketing, branding and renovation will enable the company to restructure operations and quickly obtain profitability," Siegel said in a statement.

"Siegel Group plans a major cosmetic renovation to modernize the facilities and correct deferred maintenance issues. The exterior of the property will undergo a substantial renovation with great

attention given to maintaining the resort's current character and architectural features," Siegel said. "Additionally, the lobby, restaurant and banquet facilities will be upgraded and each of the 64 rooms will be completely remodeled and modernized with services and amenities such as room service, in-room movies and high-speed internet."

Siegel said the hotel will remain open during the renovations.

0 Comments          Las Vegas Sun           Login

♡ Recommend          🐦 Tweet          f Share          Sort by Best

          Start the discussion…

LOG IN WITH          OR SIGN UP WITH DISQUS ⑦

Name

Be the first to comment.

✉ Subscribe     🔵 Add Disqus to your siteAdd DisqusAdd          Ⓓ Disqus' Privacy PolicyPrivacyPrivacy

Sponsored
GARCINIA SLIM

### Drink This Each Morning & Flush Away 17Lbs Every Week!

This Fruit Eats Your Belly Fat 24/7

Learn More



Report ad

## You May Like          Sponsored Links by Taboola

### 'Wheel Of Fortune' Host Pat Sajak Lives With His Partner In …

Refinance Gold

### Michigan Brothers Unearth 220 Year Old Treasure

Case 5:18-cv-00541-BO   Document 9-1   Filed 12/10/18   Page 39 of 51

**EXHIBIT F**

Google   mt charleston resort sold                                    🔍          Sign in

All    News    Images    Maps    Shopping    More            Settings       Switch to Chrome
                                                                                            Hide annoying ads and protect against
                                                                                            malware on the web
About 18,000,000 results (0.43 seconds)
                                                                            NO THANKS        YES

**Resort on Mount Charleston sold to North Carolina couple for $4.8M ...**
https://www.reviewjournal.com › Business ▾
Jun 28, 2018 - The Crossmans acquired the Resort on Mount Charleston, some 40 miles northwest
of the Strip, from The Siegel Group. The Las Vegas real estate firm announced this week that it sold
the 64-room hotel for $4.8 million.

**Resort on Mount Charleston sold for $4M; hotel to be renovated**
https://www.lasvegasnow.com/news/resort...mount-charleston-sold.../1280197262 ▾
Jul 2, 2018 - Resort on Mount Charleston sold for $4M; hotel to be renovated. LAS VEGAS - Big
changes are on the horizon for the Resort on Mount Charleston. A couple from North Carolina just
bought the 64-room hotel that was built in 1984 on Kyle Canyon Road, about 40 miles away from
downtown Las Vegas.

**UPDATE: A look at the renovations coming to the Resort on Mount ...**
https://www.ktnv.com/.../north-carolina-based-group-buys-mt-charleston-resort-for-4... ▾
Jun 29, 2018 - Say goodbye to the Resort on Mount Charleston, and hello to the ... new owners
say the resort will be a unique experience inside and out.

**The Resort on Mount Charleston sold for $4.8 million | KSNV**
news3lv.com/news/local/the-resort-on-mount-charleston-sold-for-48-million ▾
Jun 29, 2018 - The Resort on Mount Charleston sold for $4.8 million. LAS VEGAS (KSNV) — The
Resort on Mount Charleston has been sold for $4.8 million, the owner announced Friday.

Videos

                                                         >

New owners, big            Las Vegas Review-         A new look at the
plans for Resort on        Journal - Resort on       Resort on Mount
Mount Charleston           Mount Charleston          Charleston
                           Sold for $4.8 ...

8 News NOW Las Vegas                                 KTNV Channel 13 Las Vegas
YouTube · Jul 3, 2018       Facebook · Aug 7, 2018    YouTube · Jul 5, 2018

**Resort on Mount Charleston sold to North Carolina couple for $4.8M**
https://www.cdcgamingreports.com/resort-on-mount-charleston-sold-to-north-carolina... ▾
Jun 29, 2018 - The Crossmans acquired the Resort on Mount Charleston, some 40 miles ... The
Las Vegas real estate firm announced this week that it sold the ...

**Ellis Island new owners of Mt. Charleston Lodge - VEGAS INC**
https://vegasinc.lasvegassun.com/.../ellis-island-new-owners-of-mt-charleston-lodge/ ▾
Apr 20, 2018 - Friday, April 20, 2018 | 2 a.m. - Ellis Island purchased the Mt. Charleston Lodge in
early April and plans to spruce up the scenically-located ...

**Mount Charleston Hotel sold as another goes bankrupt - Las Vegas Sun**
https://lasvegassun.com/news/2008/dec/11/mount-charleston-hotel-sold/ ▾
Dec 11, 2008 - "Since being constructed, the prior owners of the Mount Charleston ... the resort's
current character and architectural features," Siegel said.

**The Retreat on Charleston Peak: Home**
https://retreatoncharlestonpeak.com/ ▾
Next summer, we hope to have a pool complex that is complimentary to hotel guests and with a one-
of-a-kind mountain view. Local pool passes are expected.

Mt Charleston Hotel Sold - KDWN.com
https://kdwn.com/2018/07/05/mt-charleston-hotel-sold/ ▾
Jul 5, 2018 - Rhea Hospitality based in Durham, North Carolina, has purchased The Resort on
Mount Charleston from the Siegel Group.New owners Colin ...

The 10 Best Hotels in Mount Charleston, Las Vegas for 2018 | Expedia
Ad www.expedia.com/Hotels-Las-Vegas ▾
Rating for expedia.com: 4.3 - 213,647 reviews
More Choices. Best Prices. Trusted. Save Big on Hotels in Las Vegas. Limited Time Offers. Secure
Booking. Instant Confirmation. Save up to 50% on Hotels. Compare & Save. New Expedia Rewards.
Expedia's Best Prices. 11+ Million Hotel Reviews. 24/7 Customer Support. Verified Guest Reviews.
Last Minute Deals · Great Hotel Deals · Book Hotel+Flight & Save · Expedia Add-On Advantage

Searches related to mt charleston resort sold

| | |
|---|---|
| the resort on mount charleston | mount charleston lodge |
| retreat on charleston peak | the resort on mount charleston reviews |
| mt charleston resort rooms | mt charleston news today |
| mt charleston resort restaurant | mount charleston resort hotel |

1 2 3 4 5 6 7 8 9 10      Next

89109, Las Vegas, NV - From your Internet address - Use precise location - Learn more

Help      Send feedback      Privacy      Terms

NEWS

# Resort on Mount Charleston sold for $4M; hotel to be renovated

by: Orko Manna  (https://www.lasvegasnow.com/meet-the-team/orko-manna/419916809)
Posted: Jul 02, 2018 / 07:32 PM PDT
Updated: Jul 02, 2018 / 07:32 PM PDT

LAS VEGAS - Big changes are on the horizon for the Resort on Mount Charleston.  A couple from North Carolina just bought the 64-room hotel that was built in 1984 on Kyle Canyon Road, about 40 miles away from downtown Las Vegas.

The couple paid more than $4 million for the property.

The new owners say they're planning some big renovations. Their goal is to make it the world-class staycation "spot for locals, that it once was."

"Years ago, it was a nice place to be," said Leo Palacio, Las Vegas resident.

Palacio and his family frequently travel to Mount Charleston.  But, they say their last trip to the resort wasn't all that great.

"The carpet was just; you step on it, and it's cracked, the food last time we had lunch here was very disappointing," Palacio said.

The hotel's new owners say those problems will soon be part of the past.

"The setting is beautiful, but the property itself looks like it hasn't bee[n] in a while," said Colin Crossman, owner of The Resort on Mount Char[leston]

Crossman and his wife Deanna run a hospitality group based in North Carolina. They just bought the resort from the Siegel Group for $4.8 million.

"Fix it up and make it what people may remember it from the early 90s or late 80s," said Crossman.

On their to-do list: Fixing the carpet and painting the walls. Their big plans include reopening the spa, revamping the food menu, and creating an outdoor bar that overlooks the mountains.

"Come up here for dinner; come up here for a drink, if you want to get out of the heat or you want to come and do some work, or whatever, come on up here," Crossman said.

"1990, February 3rd, we had our honeymoon here," said Nancy Hughes, a Pahrump resident.

Hughes lives in pahrump.. she has fond memories here -- and wants to add to them.

"We were thinking about spending our 30th anniversary here, so I'm curious of how that's going to look in two years," Hughes said.

"If they make the changes that they say they will, I think people will likely come back. We would like to come back," Palacio said.

The new owners say they hope to have all the renovations completed in the next couple of years. The Crossmans also said the Resort on Mount Charleston will remain open while the renovations are being made.

Copyright 2018 Nexstar Broadcasting, Inc. All rights reserved. This material may not be published, broadcast, rewritten, or redistributed.

**SHARE THIS STORY**



SUBSCRIBE (https://checkout.reviewjournal.com/subscriptionpanel)     SIGN IN / OUT (https://account.reviewjournal.com)

Already a print subscriber? Register here (https://account.reviewjournal.com/Login.aspx) for unlimited digital access. Need help? Call 702-383-0400 from 6am to 5pm PT.

Home (/) >> Business (https://www.reviewjournal.com/business/)

# Resort on Mount Charleston sold to North Carolina couple for $4.8M

f
(https://www.facebook.com/sharer/sharer.php?u=https%...)

(https://twitter.com/intent/tweet?...1419576&via=reviewjournal&text=Resort%20on%20Mount%20Charleston%20sold%20to%20North%20Carolina%20couple%20for%20%244.8M&body=You
may
be
interested
in
the
following
post:
https://www.reviewjournal.com/post/1419576)

Resort on Mount Charleston Sold for $4.8 million (Madelyn Reese/Las Vegas Review-Journal)

‹                                                                              ›



By Eli Segall
(https://www.reviewjournal.com/staff/eli-segall/) / Las Vegas Review-Journal
June 28, 2018 - 10:02 pm

CLOSE

More in Business (https://www.reviewjournal.com/business/)


Payless pranks shoppers, sells discount shoes at luxury prices (https://www.reviewjou...


Marriott says 500M affected in data breach at Starwood hotels (https://www.reviewjou...


Las Vegas home prices set to rise nearly 8 percent in 2019 (https://www.reviewjou...


Las Vegas sports teams to add $636M to the local economy (https://www.reviewjou...



‹                                                                              ›

SUBSCRIBE (https://checkout.reviewjournal.com/subscriptionpanel)     SIGN IN / OUT (https://account.reviewjournal.com)

Already a print subscriber? Register here (https://account.reviewjournal.com/Login.aspx) for unlimited digital access. Need help? Call 702-383-0400 from 6am to 5pm PT.

Updated June 29, 2018 - 4:17 pm

North Carolina hoteliers Colin and Deanna Crossman have expanded into Las Vegas' nearby mountain community.

The Crossmans acquired the Resort on Mount Charleston, some 40 miles northwest of the Strip, from The Siegel Group. The Las Vegas real estate firm announced this week that it sold the 64-room hotel for $4.8 million.

The new owners are planning a big menu of changes for the 1980s-era property on Kyle Canyon Road, which faced foreclosure after the economy crashed and, according to the seller, has a strong meetings business but ended up "on the back burner" for upgrades.

"It has so much untapped potential," Deanna Crossman said.

They also plan to rename it The Retreat on Charleston Peak, Colin Crossman confirmed.

As the owners of Rhea Hospitality (https://boutiquenc.com), the Crossmans operate The King's Daughters Inn, a 17-room hotel in Durham, North Carolina, and The Mayton Inn, a 45-room hotel in Cary, North Carolina. The couple wanted to expand "faster than we could by ourselves," Deanna Crossman said, so they raised money from investors and shopped for acquisitions.

SPONSORED CONTENT

Reverse Mortgages: Worth the Risk?

by LendingTree

More in Business

At first they dismissed the idea of buying a hotel in Las Vegas, figuring that it was too far and that they didn't know the market. But there are daily nonstop flights from Raleigh, North Carolina, to Las Vegas, she said, and locals know the Resort on Mount Charleston, which had been on the market for a few years.

Las Vegas residents are the target clientele, she said, noting that locals often head to Mount Charleston to ski in the winter, escape the summer heat and gather outdoors. She also said that rangers out of the nearby Spring Mountains Visitor Gateway run behind the hotel.

Already a print subscriber? Activate your digital access now! All contents copyright © Las Vegas Review-Journal. Need help? Call 702-383-0400 from 6am to 5pm PT

The Crossmans want to overhaul the menus, expand the bar hours and make lots of physical upgrades to the building. "It needs a lot of love," Deanna Crossman said.

Their plans include new furniture, bathrooms, paint and flooring in the guest rooms. According to Colin Crossman, the hotel carpeting is "just disgusting," with some sections held together by duct tape.

"It's time to bring it into a new era, a new chapter in its life, and we're pretty excited about that," Deanna Crossman said.

In 2008, Siegel Group founder Steve Siegel acquired a 50 percent ownership stake in the hotel and took over its management. But by 2012, the resort was headed for a foreclosure sale, Clark County records show.

Siegel (https://www.reviewjournal.com/business/boutique-hotel-rumor-east-of-las-vegas-strip-sells-for-18m/) — known for his Siegel Suites chain of low-priced apartments — said the foreclosure was tied to his partner's loan, which he said was obtained before he acquired a stake in the hotel. He bought the debt on the property and acquired full ownership around the time the foreclosure loomed.

He said that the hotel at one point was "really struggling" but that he beefed up its marketing and focused mainly on building its events business.

The resort hosted a lot of big gatherings, he said, and he planned to expand the hotel. But "we just got really busy. It kind of always got put on the back burner."

Siegel added that at any given time, his group was doing 15 to 20 other projects in Las Vegas and other cities.

"Something always came up and jumped ahead of it," he said.

Contact Eli Segall at esegall@reviewjournal.com or 702-383-0342. Follow @eli_segall (https://twitter.com/eli_segall) on Twitter.

### Rhea Hospitality hotels

Colin and Deanna Crossman, who just purchased the Resort on Mount Charleston, own two other hotels, both in North Carolina. They are:

CLOSE

More in Business (https://www.reviewjournal.com/business/)

 Payless pranks shoppers, sells cheap shoes at luxury prices (https://www.reviewjou...

 Marriott says 500M guests' data breach at Starwood hotels (https://www.reviewjou...

 Las Vegas home prices set to rise nearly 8 percent in 2019 (https://www.reviewjou...

 Las Vegas sports teams to add $636M to the local economy (https://www.reviewjou...



Durham, N.C.

17 rooms

Built in 1925

Former women's retirement home

**The Mayton Inn**

SUBSCRIBE (https://checkout.reviewjournal.com/subscriptionpanel)   SIGN IN / OUT (https://account.reviewjournal.com)

Already a print subscriber? Register here (https://account.reviewjournal.com/Login.aspx) for unlimited digital access. Need help? Call 702-383-0400 from 6am to 5pm PT.

Cary, N.C.

45 rooms

Developed by the Crossmans, opened in 2016

Project financing included $2.4 million in loans from city of Cary



**TOP NEWS**





| Menu | 🔍 |

Quick links...

Watch | Alerts

## LOCAL NEWS

# UPDATE: A look at the renovations coming to the Resort on Mount Charleston

**Posted:** 12:05 PM, Jun 29, 2018   **Updated:** 2018-07-06 12:59:30Z

**By:** Austin Carter, Kel Dansby



**UPDATE ON JULY 5:** Say goodbye to the Resort on Mount Charleston, and hello to the Retreat on Charleston Peak.

It's a change of name and a change of faces - new owners say the resort will be a unique experience inside and out.

"It was a property that had everything it needed, just an owner who didn't care about it," said Colin Crossman, one of the new owners. "We can get in there, and we can restore it to what people remember it as it was in the '80s and early '90s."

Crossman says it will be a gradual process, but in the end, he believes it will bring even more locals and tourists in for a stay.

"They can come here to stay, they can come here for food, and once we implement these changes it's going to be a beautiful experience," he says.

Crossman says these upgrades will be finished in about three years, but folks can start seeing some of the smaller upgrades this year.

## ORIGINAL STORY

Rhea Hospitality, a group based out of North Carolina, has purchased Resort on Mount Charleston   on Kyle Canyon Road from Siegel group for $4.8 million.

The sale became official on June 26 at 5 p.m. and the co-owner of Rhea Hospitality, Deanna Crossman, says the resort needs some major TLC (tender love and care).

Rhea Hospitality plans on changing all the menus, extending bar hours and including more craft cocktails. They are also renovating the interior furniture, paint, bathrooms, and more.

Next spring, they plan on adding a pool and hot tubs.

The founder of the Siegel Group acquired a 50 percent ownership stake in the hotel in 2008 and full ownership in 2012. The Siegel Group also operates Siegel Suites, a chain of low-priced apartments. Minor updates took place around the time Steve Siegel took ownership but the resort has mostly relied on corporate-sponsored events.

CURATION BY



### Vacation selfie saves man from prison sentence



Sponsored
### Las Vegas Nevada: Stunning New 2019 Stair Lifts
Yahoo! Search



Sponsored
### [Pics] She Suspiciously Paid For Everything In Cash For Years, Then They Realized Why
Ice Pop



### Delivery driver throws package out of window